**IN THE COURT OF APPEALS OF IOWA**

No. 3-1213 / 13-0433
Filed March 26, 2014


**BECKY RICE, KIM COSGRIFF, BOBBIE
SALA, DWYLA MOSHER, SUZANNE NEU,
JAMES NEU, and JULIE YOUNG,**
        Plaintiffs-Appellants,

**vs.**

**PROVIDENCE POINTE, L.C., PROVIDENCE
POINTE CONDOMINIUM ASSOCIATION, INC.,
PROVIDENCE POINT CONDOMINIUMS, L.C.,
PROVIDENCE POINT OWNER ONE, L.C.,
PROVIDENCE POINT OWNER TWO, L.C.,
PROVIDENCE POINT OWNER THREE, L.C.,
TWO RIVERS BANK AND TRUST, HAVERKAMP
PROPERTIES, L.L.C., and BRENT HAVERKAMP,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.



        The owners of condominium units appeal the court's summary judgment

ruling dismissing their breach of contract claims.  **AFFIRMED.**



        Jon Hoffmann of The Law Offices of Jon Hoffman, P.C., West Des

Moines, for appellants.

        James E. Nervig of Brick Gentry, P.C., West Des Moines, and Craig R.

Hastings of Hastings Gartin & Boettger, L.L.P., Ames, for appellees Providence

Pointe, L.C., Providence Pointe Condominium Association, Inc., Providence

Pointe Owner One, L.C., Providence Pointe Owner Two, L.C., Providence Pointe Owner Three, L.C., Haverkamp Properties, L.L.C., and Brent Haverkamp.

Matthew C. McDermott, Thomas L. Flynn, and Margaret C. Callahan of Belin McCormick, P.C., Des Moines, for appellee Two Rivers Bank and Trust.


Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**BOWER, J.**

After Providence Pointe Condominiums, L.C. (PPCLC), the original developer of a condominium project, defaulted on its note and mortgage with Two Rivers Bank and Trust (Two Rivers), PPCLC and Two Rivers entered into a voluntary foreclosure agreement. Four months later, Two Rivers and Haverkamp Properties entered into a real estate contract.[1] Haverkamp Properties completed the project, added the buildings it constructed into the condominium regime, retained ownership of its units, and leased or rented the units it owned.

The Rice plaintiffs, purchasers of condominium units from PPCLC, filed breach of contract and breach of fiduciary duty claims against PPCLC, the Providence Pointe Condominium Association (the Association), Two Rivers, and Haverkamp Properties. The district court granted partial summary judgment to Two Rivers and Haverkamp Properties,[2] and the remaining issues were submitted to binding arbitration. In this appeal, the Rice plaintiffs claim the court erred in granting summary judgment on Two Rivers' and Haverkamp Properties' alleged contract breaches—(1) failure to turn over control of the Association to them and (2) failure to provide notice and obtain "vote, consent, or approval" before taking post-foreclosure actions. We affirm.

**I. Background Facts and Proceedings.**

**A. PPCLC Development.** On September 27, 2006, PPCLC filed articles of organization forming a limited liability company. Also on September 27, the

---

[1] We refer to Brent Haverkamp and all Haverkamp entities as Haverkamp Properties.
[2] Because the Association and Haverkamp Properties presented a joint defense, a reference to court action by defendant Haverkamp Properties includes defendant, the Association. PPCLC was administratively dissolved before the petition was filed.

Association filed articles of incorporation forming a non-profit corporation and stating its "primary purpose" was operating a homeowner's association for Providence Point Condominiums.

In October 2006 Century Trace Development II, L.C. conveyed Lots 1-7 in Plat 1 to PPCLC.[3] PPCLC signed a $6 million promissory note with Two Rivers, and the note was secured by a mortgage encumbering Lots 1-7. In December 2006 PPCLC platted these lots as Providence Pointe Plat 2. In June 2007 PPCLC filed a "Declaration of Submission of Property to Horizontal Property Regime for Providence Pointe Condominiums" (Declaration). *See* Iowa Code Ch. 499B (2007) (Horizontal Property Act (Condominiums)).

The 2007 Declaration identified PPCLC as the "Developer" with an interest in "proposed improvements to be known as Providence Pointe Condominiums." PPCLC conveyed Phase 1 into the regime. Phase 1 "is to consist of" a two-story, sixteen-unit building on Lot 5 and a clubhouse with a pool on Lot 7.

The 2007 Declaration showed PPCLC intended to construct a condominium building on each of Lots 1-4 and Lot 6 by (1) expressly identifying Plat 2's remaining lots as "Additional Land" and (2) expressly providing for the later expansion of the regime in phases "at any time by subsequent amendments thereto adding the Additional Land" in the Developer's "sole discretion"—"up to

---

[3] Prior transactions included: in May 2004 Century and the City of Johnston entered into an agreement regarding the development of land into residential and commercial properties; in January 2006 a portion of Century's land was platted as Providence Pointe Plat 1, and Plat 1 included "Outlot X"; in May 2006, Century and the City of Johnston entered into a development agreement dividing a part of "Outlot X" into Lots 1-7 for a condominium project.

three (3) two-story buildings with twenty (20) single family units and two (2) buildings with thirty-six (36) single family units."

Declaration Article III.3 *created* ownership units with voting privileges appurtenant to each Unit. Owners could rent or lease their unit, and a unit's vote "shall be counted for all purposes . . . irrespective of any actual occupancy or use of the Unit to which appurtenant." Declaration Article III.7 provided: "Appurtenant to each Unit shall be membership in the Association and one vote in the affairs of the Association and of the Condominium Regime."

Declaration Article V explained the "Developers Reserved Rights, Powers, and Obligations." Under Article V.1, the "Developer is irrevocably and perpetually empowered . . . to sell, lease or rent Units not previously sold by the Developer to any person." Under Article V.3, "Designation of Association Directors," the Developer had the initial right to name the Association's board of directors and, consequently, PPCLC initially controlled the Association. This Article also established the "control transfer date," the date the Developer's control of the Association was transferred to the unit owners—the earlier of

> the date by which all of the Units (after completion of all phases of the development of the Condominium Regime) have been conveyed to Unit purchasers or five (5) years from the date of the sale of the first unit . . . . Thereafter the Board of Directors shall be selected in the manner specified in the Bylaws of the Association.

Importantly, the final sentence's use of "thereafter" shows the Declaration's "right of control" provisions take precedence over the Association Bylaws.

Declaration Article VI.1 noted the condominium regime's business shall be managed by the Association and stated the Association Bylaws are attached to the Declaration as Exhibit G.

PPCLC constructed Phase 1's sixteen-unit Building 5 on Lot 5 and the pool and clubhouse on Lot 7. PPCLC offered the sixteen units for sale as owner-occupied condominiums. In June 2007 PPCLC recorded a "First Amendment" to the Declaration, amending the rent or lease provision. On August 20 PPCLC recorded a "Second Amendment" to the Declaration, listing the percentage ownership interest of each Building 5 unit.

On August 28, 2007, plaintiff and unit owner Bobbi Sala recorded the first deed of sale for a Building 5 unit in Providence Pointe Condominiums. Sala and the subsequent Building 5 unit owners received a deed conveying title to their condominium unit and to "the undivided interest in the general and limited common elements appurtenant to such unit as provided in the Declaration . . . and as amended and with any and all other interests appurtenant to such unit pursuant to said Horizontal Property Regime."

On September 17, 2007, PPCLC recorded a Third Amendment to the Declaration, substituting a new Article V.3 "control transfer date" provision: Developer's control of the Association was transferred when the earlier of—(1) "75% of all of the Units (after completion of all phases of development of the

Condominium Regime) have been conveyed to Unit purchasers" or (2) "seven (7) years from the date of the sale of the first Unit."[4]

By the summer of 2008, PPCLC had sold eleven of the sixteen Building 5 units. PPCLC sold six units to the Rice plaintiffs.

**B. Foreclosure and Subsequent Transactions.** PPCLC had partially completed the construction of the next building in the project, a thirty-six-unit Building 6 on Lot 6. PPCLC defaulted on its loan with Two Rivers and abandoned construction. In August 2008 PPCLC and Two Rivers recorded an "Alternative Nonjudicial Voluntary Foreclosure Agreement" (Foreclosure Agreement). PPCLC's unpaid note balance was $4,234,232.

On the same date, PPCLC recorded a Quit Claim Deed transferring all of PPCLC's "right, title, interest, estate, claim and demand" in "real estate in Polk County, Iowa: Lots 1, 2, 3, 4, 5, 6 and 7 in Providence Pointe Plat 2" and the five unsold units "in Building 5 in Providence Pointe Condominiums, a horizontal property regime" in "the City of Johnston, Polk County . . . together with the undivided interest in the . . . common elements appurtenant to such unit as provided in the Declaration." Two Rivers eventually sold these five units to condominium purchasers.

---

[4] Consistent with the original Declaration's "control transfer date" provision, the new section also ended with the statement: "Thereafter the Board of Directors shall be selected in the manner specified in the Bylaws of the Association." Therefore, the final sentence again shows the Declaration controls over the Association Bylaws until the transfer of control threshold has been met.

This amendment also adopted a new lease or rental provision and added a paragraph to the "Expansion of the Condominium Regime" section.

After the foreclosure, many unit owners chose not to pay their dues and assessments, forcing Two Rivers to subsidize the Association's expenses.[5] At this time Building 6 was open to the winter elements. Two Rivers contacted Brent Haverkamp of Haverkamp Properties about taking over the development.

After a meeting with unit owners, Haverkamp Properties decided to finish the development. In late December 2008, Haverkamp Properties and Two Rivers entered into a real estate contract—Haverkamp Properties agreed to buy Two Rivers' interest in Polk County real estate, "Lots 1, 2, 3, 4, 6, and 7, Providence Pointe Plat 2, Johnston, Iowa" in phased purchases matching phased construction ($3,625,000), and Two Rivers agreed to provide construction financing to Haverkamp Properties. Also, Haverkamp Properties agreed to become the Association's agent.

After Two Rivers transferred Lot 6 to Haverkamp Properties on December 31, 2008, Haverkamp Properties winterized Building 6 and completed its construction. Haverkamp Properties informed the unit owners, "Effective February 1, 2009, Haverkamp Properties will manage the Owner's Association." Haverkamp Properties installed its own representatives as directors of the Association.

Two Rivers deeded its other lots to Haverkamp Properties in phases as the construction continued—Lot 3 in June 2009, Lot 4 in October 2009, and Lot 1

---

[5] The expenses Two Rivers paid on behalf of the Association include $15,000 to Conlin Properties for property management, $1500 in insurance premiums, and over $23,000 to settle the Association's books.

in November 2009. Haverkamp Properties retained the ownership of the completed units and rented the units.

In December 2009, Haverkamp Properties recorded the Fourth Amendment, replacing "the Original Declaration including the Bylaws and all exhibits thereto . . . and all Amendments" and adding buildings and lots into the condominium regime (Lots and Buildings 6, 3, 4, and 1).

In August 2010 the Secretary of State issued a certificate of dissolution for PPCLC, the original developer. In November 2010 Two Rivers transferred Lot 2, the last remaining lot, to Haverkamp Properties. In January 2011 Haverkamp Properties, as owners of 67% of the total votes of the Association,[6] executed a "First Amendment to the Amended Declaration" adding Lot 2, Building 2 into the condominium regime. The completed regime consisted of 157 units in six multi-unit residential buildings and a clubhouse and pool. Haverkamp Properties owned 141 units, and the sixteen units in Building 5 are owned by others.

**C. District Court Litigation.** In February 2011 the owners of six units in Building 5 filed a two-count petition alleging breach of contract and fiduciary duties. The contract and the fiduciary counts alleged the same three categories of claims—failure to turn over the Association, failure to give notice and hold a vote after the foreclosure, and failure to properly manage the Association and provide requested information. Alleged damages included the Rice plaintiffs' inability to refinance their units, their inability to sell their units using conventional

---

[6] The Fourth Amendment's Declaration Article XV.1 stated: "[T]his Declaration may be amended . . . by a resolution . . . duly adopted by the affirmative vote of Unit Owners holding not less than sixty-seven percent (67%) of the total votes in the Association."

lending practices, and their inability to participate in the Association's governance.

In May and June 2012 Haverkamp Properties and Two Rivers filed motions for summary judgment. The Rice plaintiffs resisted. The court granted the motions[7] on the contract and fiduciary breaches based on: (1) the defendants' failure to turn over control of the condominium Association to the plaintiffs; and (2) the defendants' failure to give the plaintiffs notice and obtain consent before acting to add additional property into the condominium regime.

After the court's grant of partial summary judgment, the parties agreed to submit to binding arbitration the contract-fiduciary claims based on the third category—improper management of the Association and failure to provide requested information. On February 22, 2013, the parties entered into a private arbitration agreement. After hearing, the arbitrator ruled in favor of the defendants. Also on February 22, the court entered a final order on the district court litigation. The Rice plaintiffs now appeal the district court's grant of summary judgment to the defendants on the contract-based claims.[8]

---

[7] The court's summary judgment ruling initially addressed the issue of what constituted the contract allegedly breached. In their resistance to summary judgment the Rice plaintiffs claimed, for the first time, that additional contracts were allegedly breached: 2004 City of Johnson development agreement, 2006 City of Johnston zoning documents, and the real estate contract between the defendants. The court ruled (a) the petition explicitly alleges the defendants violated the Declaration and Bylaws and (b) "the alleged breach of these documents alone forms the basis for this suit." During oral argument counsel confirmed the contract allegedly breached for purposes of this appeal is the Declaration and the Association Bylaws.

[8] The Rice plaintiffs-appellants' brief includes a section: "Issue II—[S]ummary judgment as to the breach of fiduciary duty claim should have been denied." Defendants-appellees' briefs responded to the fiduciary issues raised. Plaintiffs-appellants did not file a reply brief. During oral argument the plaintiffs-appellants' counsel stated the fiduciary issues were not at issue on appeal. Because the court prepares for and

## II. Scope and Standards of Review.

We review rulings on motions for summary judgment for the correction of errors at law. *Mueller v. Westmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). "We view the evidence in the light most favorable to the non-moving party." *Id.*

## III. Breach of Contract—Failing to Turn Over Control of the Association.

**A. Two Rivers.** The Rice plaintiffs claim Association Bylaws section 3.4—PPCLC "shall be the only Member of the Association entitled to vote for so long as it holds title to any Unit"—was "put into effect" by the Foreclosure Agreement and also claim the "bylaws of this corporation do in fact control" over the Declaration's provisions. At foreclosure, PPCLC "ceased being a voting member of the Association and by operation of the bylaws should at that point in time, [have] turned over to the unit owners at the Association the voting rights." The Rice plaintiffs conclude the district court erred in ruling (1) the Declaration controls over the Association Bylaws, and (2) PPCLC transferred all of its rights as Developer, including the right to control the Association, to Two Rivers.

Two Rivers responds the district court correctly ruled (1) the Declaration controls over the Association Bylaws, and (2) it took over *all* of PPCLC's interest, rights, and obligations as Developer under the Foreclosure Agreement and deed.

---

analyzes all of the issues briefed, prompt notice (in a reply brief or a letter) that plaintiffs-appellants had decided to abandon the fiduciary-duty issues in their appeal should have been submitted to the court.

During oral argument, counsel stated PPCLC's numerous rights and obligations as the Developer can be viewed as a bundle of sticks and, in essence, the Rice plaintiffs are illogically claiming one stick—the right to control the Association—was somehow not transferred along with the other Developer's rights and obligations.

In our review, we "apply the general rules for contracts to construe" the "governing documents"—"its declaration and bylaws." *See Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 150 (Iowa 2011). We construe the Declaration and the Association Bylaws as a whole. *See id.* As the district court noted, the Association Bylaws stem from, are annexed to, and are a part of the Declaration. But for PPCLC recording the Declaration with the Bylaws attached as an exhibit, the Association Bylaws would not exist. *See* Iowa Code §§ 499B.3 (recording of declaration to submit property to regime), 499B.4 (contents of declaration), 499B.14 (stating "administration of every property shall be governed by bylaws, a true copy of which shall be annexed to the declaration and made a part thereof") (2011).

Our "Horizontal Property Act (Condominiums)" also provides that no valid change to the Association Bylaws can be made unless such change is set forth in the Declaration and "duly recorded." *See id.* § 499.14. Finally, our supreme court recognizes a declaration filed under this chapter "is the association's 'constitution.'" *See Oberbillig*, 807 N.W.2d at 150 (stating the bylaws in this case specifically provided the declaration controls in the event of any conflict and this bylaw is consistent with the declaration's role as "the association's 'constitution'").

Accordingly, we find no error in the district court's conclusion the Association Bylaws should not be applied to "override any powers or provisions expressly provided in the Declaration."

We turn to whether PPCLC transferred all of its rights as Developer to Two Rivers in the Foreclosure Agreement and deed. Under 2007 Declaration Article V.7, the Developer "shall have the right to assign all of its Reserved Rights and obligations as Developer to any person, corporation, or other entity." Therefore, the Declaration does not preclude the transfer of all of PPCLC's rights to Two Rivers.[9] Pointing to linguistic inconsistencies in the Foreclosure Agreement—the use of the word Declarant and not Developer—the Rice plaintiffs claim the Foreclosure Agreement was inadequate to *actually assign* PPCLC's rights to Two Rivers.

Two Rivers responds the assignment conveyed all of PPCLC's rights as declarant "or otherwise," notes the Rice plaintiffs identify no separate role of a "Declarant" and no separate rights, apart from the Developer's rights, to which the language could refer, and claims the district court properly concluded the terms "developer" and "declarant" have the same meaning. The disputed provision in the Foreclosure Agreement stated:

> The Deed also conveys transfers and assigns Borrower's [PPCLC] rights of possession and equity of redemption in and to the Property, and all rights of Borrower as the "Declarant" or otherwise, under any covenants pertaining to the Property and recorded in the Dallas County, Iowa records. This Agreement shall be deemed a transfer and assignment by Borrower of any and all interests it has

---

[9] Two Rivers' lack of intent to complete the regime itself is irrelevant to the rights it obtained under the Foreclosure Agreement for the purpose of passing on those rights and powers to another.

in the . . . Providence Pointe Condominium Association and Borrower shall turn over to Bank all books and records in connection therewith. Further, contemporaneously with the execution of this Agreement, Obligors, as applicable, shall resign as officers, directors (or otherwise) of the Providence Pointe Condominium Association.

We agree with and adopt the district court's resolution—it "is clear from the language of the rest of this paragraph as well as the [Foreclosure] Agreement as a whole[10] that the parties intended a conveyance of Developer rights" because: (1) the assignment extended to all rights of PPCLC as Declarant *or otherwise*; (2) the assignment referenced the recorded covenants;[11] and (3) the assignment specifically noted the transfer included PPCLC's interest in the Association.

We find additional support for this conclusion in the fact the terms "declarant" and "developer" are used interchangeably in 2007 Declaration Article XIV.1, "Expansion of the Condominium Regime," as follows:

> The right to enlarge the Condominium Regime from time to time, is reserved exclusively to Developer . . . . Developer shall have and exercise the right to enlarge the Condominium Regime not only in its individual capacity but also as agent for all of the Unit Owners in the Condominium Regime as now constituted or hereafter enlarged and such Unit Owners do hereby irrevocably

---

[10] The first page of the Foreclosure Agreement set out the legal description of the property in Plat 2, City of Johnson, Polk County, "presently" encumbered by the Two Rivers mortgage and designated it "the Property." PPCLC agreed to simultaneously "convey to Bank all of its interest in the Property, subject to the Mortgage, by Quit Claim Deed."

[11] The reference to Dallas County rather than Polk County is an "obvious error" and the intent of PPCLC and Two Rivers to transfer Polk County property is clear. *See Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (ruling the "cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract").

appoint Developer as their agent for the purpose of so enlarging the Condominium Regime. Declarant shall signify this expansion . . . by filing an Amendment to this Declaration . . . with the County Recorder.

Based on all of the above, we conclude the Foreclosure Agreement clearly and specifically transferred all rights and responsibilities of PPCLC to Two Rivers, and Two Rivers legally succeeded to the role of Developer under the Foreclosure Agreement.

As the successor Developer, Two Rivers' right to control the Association continued until the earlier of Declaration Article V's "transfer of control" provisions was met. Here, neither the time nor the units-sold thresholds (in either the original Declaration or the Third Amendment) were triggered during the time Two Rivers was the Developer (August through December 2008). Accordingly, Two Rivers did not breach the contract by failing to turn over control of the Association to the Rice plaintiffs.

**B. Haverkamp Properties.** In the December 2008 real estate contract, Haverkamp Properties legally succeeded to the role of Developer and assumed all Developer rights and responsibilities. As with Two Rivers, neither the time nor the units sold "transfer of control" thresholds were met in December 2008 or when Haverkamp Properties took over management of the Association from Conlin Properties on February 1, 2009. Thus, Developer Haverkamp Properties had no obligation to turn over control of the Association to the Rice plaintiffs. To the extent the Rice plaintiffs broadly assert additional theories on this breach of contract ground, these claims are waived for inadequate appellate presentation. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102-03 (Iowa 2008).

**IV. Breach of Contract—Failing to Give Notice and Obtain Consent.**

The Rice plaintiffs claim "any actions which occurred after the Voluntary Nonjudicial Foreclosure, on behalf of [PPCLC], Haverkamp Properties, or [Two Rivers] were without authority, vote, consent, or approval." These claims are waived for inadequate appellate presentation. *See id.*

**V. Conclusion.**

We have considered all claims raised by the Rice plaintiffs on appeal and arguments not specifically addressed are deemed to be without merit. We affirm the district court's grant of summary judgment to Two Rivers and Haverkamp Properties.

**AFFIRMED.**